LAW OFFICE OF
GARO B. GHAZARIAN
State Bar No. 152790
15915 Ventura Blvd., Suite 203
Encino, California 91436
Tel: (818)905-6484
Fax: (818)905-6481

Attorney for Defendant
ARA E. AVETYANTS

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ARA E. AVETYANTS, et al.<br>Defendants. | No. CR 08-1455 BEN<br>**NOTICE OF MOTIONS AND MOTIONS TO:**<br>**(1) JOIN IN DEFENDANT MOTIVOSYAN'S MOTION TO DISMISS INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY;**<br>**(2) JOIN IN DEFENDANT MOTIVOSYAN'S MOTION TO SUPPRESS STATEMENTS;**<br>**(3) MOTION TO SUPPRESS EVIDENCE;**<br>**(4) GRANT LEAVE TO FILE FURTHER MOTION; AND**<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br>DATE: June 30, 2008<br>Time: 2:00 p.m. |

TO: KAREN P. HEWITT, UNTIED STATES ATTORNEY, AND
    REBECCA KANTER, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on June 30, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, defendant ARA E. AVETYANTS, by and through his counsel of record, GARO B. GHAZARIAN, will move this Court to enter an order granting the following motions.

**MOTIONS**

Defendant ARA E. AVETYANTS, by and through his counsel of record, GARO B. GHAZARIAN, moves this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order permitting defendant AVETYANTS to:

1. Join in co-defendant MOTIVOSYAN's motion to Dismiss Indictment Due to Misinstruction of the Grand Jury;

2. Join in co-defendant MOTIVOSYAN's motion to Suppress Statements;

3. Motion to Suppress Evidence; and

4. Grant to leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Dated: August 1, 2008          Respectfully submitted,


                                    /s/ Garo Ghazarian
                                GARO B. GHAZARIAN
                                Attorney for Defendant
                                ARA E. AVETYANTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF FACTS**

This statement of facts is based on Government reports provided to defendant AVETYANTS thus far in discovery. Defendant does not accept this statement of facts as his own statement, and reserves the right to take a contrary position at motions or trial.

**INITIAL STOP**

Discovery reports indicate that on April 26, 2008, at approximately 10:15 a.m., Border Patrol Agent K. Zoetewey, announced over the service radio that he was conducting a vehicle stop on Monument Road approximately one quarter mile East of Hollister Street. The discovery indicates that "prior to the vehicle stop, the three occupants of the vehicle were seen throwing out trash, receipts, and banking documents from the vehicle."

The discovery does not list any factors that purportedly justified the agent's suspicion to eventually stop the vehicle. According to discovery provided, defendant AVETYANTS was the driver of the vehicle, and co-defendants MOTIVOSYAN and BARSEGIAN were passengers of the vehicle.

Agent Zoetewey stopped the vehicle, approached the occupants and conducted an immigration inspection. All three defendants who were occupants in the vehicle provided to the agent valid immigration documents. At all times, as a backup Agent, Agent Stallings waited at the passenger side rear of the vehicle while Agent Zoetewey was conducting the immigration inspection.

Border Patrol Agent Zoetewey started questioning the defendants. It is alleged that the occupants, though not clear who made the statement, further responded to the agent that they were in the area "looking to ride some horses." Thereafter, the defendants were released and allowed to drive away.

**SECOND STOP**

About two hours later, Border Patrol Agent Stallings saw the people from the earlier stop walking in Border Field State Park. Thirty minutes after the second sighting, near the entrance to that same park, Agent Stallings saw the car that was stopped earlier with four doors open. This led Agent Stallings to believe four people were trying to get into the car. The agent stated that he was "suspicious" that there were four people instead of three. **The agent again approached the four people who were sitting on a log and performed an immigration stop on all four people, including the three people who had**

4

**already cleared the immigration stop with him earlier that day.** Agent Stallings again verified that the three defendants had valid immigration documents. However, the fourth person (the material witness) only produced a California Driver's License.

Despite having proper immigration documentation, Agent Stallings began questioning the three individuals and asked them if they remembered him from their earlier encounter. They nodded yes. Statements were made in English about the fourth person and what they were doing in the park; however, it is unclear who made the statement.

While records were being checked for the fourth person, Agent Stalling asked defendant AVETYANTS if it was okay to search the vehicle. Defendant AVETYANTS allegedly gave Agent Stalling consent to search the vehicle.

A records check revealed that the fourth person was denied asylum in January 2008. All four people were arrested.

**ARGUMENT**

**I.   THE INITIAL STOP OF DEFENDANT AVETYANTS' VEHICLE BY THE BORDER PATROL AGENT ZOETEWEY WAS UNLAWFUL**

The stopping of an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments, even though the purpose of the stop is

limited and the resulting detention quite brief. <u>Delaware v. Prouse</u>, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59; L. Ed. 2d 660 (1979).

**As the U.S. Supreme Court has noted, "[E]ven assuming that purpose [to prevent crime] is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.** When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." <u>Brown v. Texas</u>, 443 U.S. 47, 52 (1979). The Court has also insisted that **"[A person] may not be detained <u>even momentarily</u> without reasonable, objective grounds for doing so.**" <u>Florida v. Royer</u>, 460 U.S. 491, 498 (1983) [Emphasis added].

The Fourth Amendment forbids stopping a vehicle even for the limited purpose of questioning its occupants unless police officers have a founded suspicion of criminal conduct. <u>United states v. Salinas</u>, 940 F.2d 392, 394 (9th Cir. 1991); <u>United states v. Ramirez-Sandoval</u>, 872 F.2d 1392, 1395 (9th Cir. 1989).

The Fourth Amendment applies to investigative stops of vehicles. <u>United States v. Garcia-Camacho</u>, 53 F.3d 244, 245 (9th Cir. 1995); see <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873,

6

878, 95 S. Ct. 2574, 2578-79 (1975).  Such stops must be predicated on at least reasonable suspicion of wrongdoing. Garcia-Camacho, 53 F.3d at 245-46.

    The Ninth Circuit has held, in the context of a roving patrol stop, that the following factors, when considered jointly, were insufficient to justify an investigatory stop: (1) the nervous demeanor of both the defendant and his passengers as they sat in the truck;  (2) the reduction in speed from 65 to 55 m.p.h.;  (3) the presence of a two-way antenna on the trunk of the vehicle; (4) defendant's residence in a neighborhood on the U.S.-Mexican border which was under investigation for narcotics activity;  (5) the license plate bracket indicating that the car had been purchased from a dealership associated with drug trafficking; and  (6) the size of defendant's trunk.  United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416-1417 (9th Cir. 1989).  Even under a totality of circumstance test, the Ninth Circuit held that these factors were insufficient to establish reasonable suspicion.

    Turning to the facts of this case, on April 26, 2008, the only "facts" within Border Patrol Agent Zoetwewy's knowledge at the time he stopped the vehicle were that (a) he was conducting line-watch duties on Monument Road in the Imperial Beach; (b) the area is notorious for the presence of undocumented aliens;

(c) he observed the occupants of the vehicle throwing out trash, receipts, and banking documents from the vehicle. Even arguendo if all this is true, these facts do not rise and fail to establish reasonable suspicion to conduct an investigatory stop.

 The Border Patrol Agent Zoetewey clearly had a general curiosity to explore and he improperly stopped defendant AVETYANTS' vehicle to satisfy his curiosity.  Such tactics by the Border Patrol Agent violate both the letter and spirit of the Fourth Amendment.  Border Patrol Agent Zoetewey's conduct violated well-established fundamental Constitutional principles.

> II.     **THE WARRANTLESS SECOND STOP OF DEFENDANT AVETYANTS WAS UNREASONABLE AND VIOLATIVE OF HIS RIGHTS PROTECTED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION; ALL EVIDENCE DERIVED THEREFROM MUST BE SUPPRESSED AS 'FRUIT OF THE POISONOUS TREE'**

 The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated".  U.S. Const. Amend. IV. Nothing is clearer than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed

'arrests' or 'investigatory detentions'. <u>United States v. Chamberlin</u>, 644 F.2d 1262, 1266 (9th Cir., 1979).

The exclusionary rule, which bars the admission of evidence obtained in violation of the Constitution, extends beyond the direct products of government misconduct. <u>United States v. Ramirez-Sandoval</u>, 872 F.2d 1392, 1395 (9th Cir. 1989). The exclusionary sanction applies to any "fruits" of a constitutional violation - whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention. <u>United States v. Crews</u>, 445 U.S. 463, 470, 100 S.Ct. 1244 (1980).

**A.   Even If The Government Produces Evidence, Sufficient To Support A Finding Of 'Reasonable Suspicion,' The Investigative Stop, Is Nevertheless Unjustifiable, Because It Transmuted Into A *De Facto* Arrest, When Border Patrol Agent Stallings Re-Conducted The Immigration Inspection, With A Full Knowledge That Defendant AVETYANTS Possessed The Proper Immigration Documents**

The Fourth Amendment permits police officers to approach individuals at random in airports to ask them questions, and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate. <u>Florida. v. Bostick</u>, 501 U.S. 429, 431 (1991).

9

"What has evolved from the cases is a determination that an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 215 (1984). **"The test for determining when a Terry-stop becomes an arrest, is whether the detention exceeded a brief stop, interrogation and, under proper circumstances..."** United States v. Washington, 387 F.3d 1060, 1069 (9th Cir., 2004). **"Then, if the stop proceeds beyond these limitations, an arrest occurs if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning."** Id. In other words, whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person [and can no longer justify the inexistence of a warrant by a mere showing of a 'reasonable suspicion']. Dunaway v. New York, 442 U.S. 200, 207, f.n. 6 (1979).

   Here, it is unmistakably clear that defendant AVETYANTS' second stop turned out to be nothing short of an arrest without probable cause or a warrant.  After initiating the second contact with defendant AVETYANTS at the Border Field State

Park, Agent Stallings : a) approached the vehicle, b) identified himself as a U.S. Border Patrol Agent, c) began to conduct an immigration inspection which was conducted earlier by Border Patrol Agent Zoetewey in the presence of Agent Stallings.

The discovery provided by the Government thus far has not presented any specific articulable facts which led Border Patrol Agent Stallings to have a reasonable suspicion that defendant AVETYANTS had, or was about to commit a crime. The defendant was previously inspected for the immigration document. Border Patrol Agent Stallings was present at the inspection and he had a full knowledge that the defendant possessed the proper immigration documents. The Border Patrol Agent Stallings had no reason to re-conduct the immigration inspection of defendant AVETYANTS. As such, at the time when the agent began the immigration inspection, it is evident that the stop of defendant AVETYANTS was an arrest, with no showing of probable cause, or prior attainment of an arrest warrant.

**B. Border Patrol Agent Stallings Had No Reasonable Suspicion To Justify Defendant Avetyants' Second Stop**

Roving Border Patrol agents must have a reasonable suspicion based on specific articulable facts that the vehicle contains aliens who may be illegally in the country. United States v.

Brignoni-Ponce, 422 U.S. 873, 884 (1975); Gonzalez-Rivera v. I.N.S., 22 F.3d 1441, 1445 (1994). While the experience of the agents may be considered, the basis of reasonable suspicion must be based on objective factors and not the subjective impressions of an officer. Gonzalez-Rivera at 1445; Nicacio v. I.N.S., 797 F.2d 700, 705 (9th Cir. 1985).

In order to determine whether an agent's suspicion was reasonable, all the factors claimed to give rise to the stop must be examined. The Ninth Circuit has held that when Border Patrol agents use factors which describe too many legitimate individuals, the factors do not create reasonable suspicion. United States v. Salinas, 940 F.2d 392 (9th Cir. 1991); United States v. Hernandez-Alvarado, 891 F.2d 1414 (9th Cir. 1989).

In Salinas, the Border Patrol agents relied on six observations before making the stop: 1) the defendant drove an old model car with a large trunk; 2) the car appeared heavily loaded; 3) the officer saw fresh handprints on the trunk; 4) the defendant appeared to be of Spanish or Mexican origin; 5) the car was registered in a town know to have a high concentration of drug and alien smuggling; and 6) defendant glanced at the Border Patrol Officer. Salinas, 940 F.2d at 393-94. The court held that these factors did not justify the stop. Id. at 394. The court explained, "Thousands of United

12

States citizens of Mexican ancestry drive old cars on perfectly legitimate errands with 100 pounds of potatoes or carpenter tools or other commodities weighing down the rear springs." Id. at 395.

On April 26, 2008 the only "facts" within the Border Patrol Agent Stallings' knowledge at the time he stopped defendant AVETYANTS were that (1) he observed the same three individuals two hours after the vehicle stop walking in the park; (2) thirty minutes later he was exiting the area and noticed the same car parked at the entrance to the park; (3) all four doors of the vehicle were allegedly open and four individuals were getting ready to enter the vehicle. Even arguendo if all of this is true, these facts do not rise even to the level of those enumerated in Hernandez-Alverado. Clearly, these factors fail to establish reasonable suspicion to conduct an investigatory stop of defendant AVETYANTS.

The Ninth Circuit has stated, "[i]n exercising their judgment, however, police officers may not infringe the privacy rights of individuals without just cause, regardless of any eventual determination of guilt." Hernandez-Alvarado, 891 F.2d at 1419.

In United States v. Kerr, 817 F.2d 1384 (9th Cir. 1987) the Ninth Circuit stated:

13

> "We recognize that effective law enforcement is often predicated on hunches developed from a police officer's years of experience in detecting criminal activity. However, underlying every Fourth Amendment analysis is a balancing between two competing concerns—society's interest in effective law enforcement and the individual's privacy and liberty interest. A Fourth Amendment stop based on hunches alone will not withstand constitutional scrutiny." Id. at 1387 (emphasis added).

### III. ALL ALLEGED STATEMENTS OBTAINED DURING THE INITIAL AND THE SECOND STOP OF THE DEFENDANTS MUST BE SUPPRESSED PURSUANT TO MIRANDA v. ARIZONA OR BECAUSE OF ACTUAL INVOLUNTARINESS

The Fifth Amendment privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner. Miranda v. Arizona, 384 U.S. 436, 476 (1966). The privilege is available outside of criminal court proceedings, and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. Id at 467. **Incriminating statements may not be used without the full warnings and effective waiver required for any other statement.** Id at 477. Incriminating statements are those which the prosecution may seek to introduce at trial, regardless of whether they are inculpatory or exculpatory. United States v. Morin, 665 F. 2d 765 (5th Cir., 1982).

14

In Morin, supra, the defendant was being tracked by law enforcement, who had full knowledge that the defendant had luggage on board the plane, and suspected that it contained narcotics.  The defendant was stopped and questioned, without prior Miranda advisements, at an airport terminal, at which point the officers asked him if he had any luggage with him. The defendant disclaimed ownership of his luggage, and by doing so allowed the police to search his luggage, because the denial constituted a relinquishment of any reasonable expectation of privacy therein. Id.  Following the arrest, during the subsequent trial, the prosecution was permitted to introduce the defendant's disclaimer statement. Id.  On appeal, the Fifth Circuit Court of Appeals held that the statement of abandonment, which the defendant made in the course of the custodial interrogation, should not have been admitted, because it clearly incriminated him. Id. at 770-771.

In the instant case, as argued above, it is the defendant AVETYANTS' position that the initial stop was not justified and that there can be no rationalization of the need to stop, detain and interrogate the defendants a second time.  The Border Patrol Agent Stallings began questioning the defendants after he obtained their documents for the immigration inspection. It is evident that the defendants were not free to

leave.  The Agent had no reason to re-inspect the immigration status of the defendants where he had full knowledge that they indeed possessed the proper immigration documents.

The Border Patrol Agent's line of questioning, was designed, and intended to elicit incriminating evidence.  The defendants were questioned without first being advised of their <u>Miranda</u> rights.  Since the <u>Miranda</u> safeguards were not complied with, the defendants' statements must be excluded.

The policies underlying the exclusionary rule of the Fourth Amendment do not invite any logical distinction between physical and verbal evidence.  <u>United States v. Ceccolini</u>, 435 U.S. 268, 275 (1978). Verbal evidence which derives so immediately from an unauthorized arrest is no less the "fruit" of official illegality than the more common tangible fruits of the unwarranted intrusion.  <u>See</u> <u>also</u>, <u>United States v. Patzer</u>, 277 F.3d 1080, 1086 (9th Cir., 2002),  <u>United States v. Basurto</u>, 497 F.2d 781, 791 (9th Cir., 1974).

Unless the arresting Border Patrol Agent Stallings is able to articulate facts to support a finding that reasonable suspicion existed to justify stopping of defendant AVETYANTS, all evidence gained from the stop, including the agent's observations and any statements by the defendant or the co-defendants or the material witness, must be suppressed as the

fruits of an illegal stop. Wong Sun v. United States, 371 U.S. 471 (1963).

    **IV. THE BORDER PATROL AGENT STALLINGS NEVER OBTAINED DEFENDANT AVETYANTS' CONSENT TO SERACH THE VEHICLE**

        **A. The Border Patrol Agent Stallings Obtained Defendant Avetyants' Consent As A Result Of An Illegal Detention**

Any consent given during an unlawful detention is invalid, and evidence obtained must be suppressed, Florida v. Royer, 460 U.S. 491 (1983).

In Florida v. Royer, 460 U.S. 491 (1983), after a brief conversation, two officers requested Royer accompany them to a small room, and without seeking Royer's consent, brought Royer's checked luggage to the room. The officers then asked Royer for consent to a search of his suitcase. In response, Royer unlocked suitcases which uncovered marijuana. The United States Supreme Court concluded,

> "We also agree that had Royer voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him. We have concluded, however, that at the time Royer produced the key to the suitcase, the detention to which he was then subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity." Florida v. Royer, at p. 502.

As argued above, Border Patrol Agents illegally detained defendant AVETYANTS. Any consent by the defendant to search his vehicle was as a result of the illegal detention, and thus any evidence seized must be suppressed.

### B. DEFENDANT AVETYANTS DID NOT PROVIDE A KNOWING AND VOLUNTAIRLY CONSENT TO SEARCH HIS VEHICLE

Valid consent to search is an exception to the warrant requirement of the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating the consent was freely and voluntarily given, and "not a mere submission to an expressed or implied assertion of authority." Bumper v. North Carolina, 391 U.S. 543 (1968); Schneckloth v. Bustamonte, supra, at 222. Whether consent to search was voluntarily provided is a factual question "to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, at 227. Evidence obtained as a result of an involuntary consent must be suppressed as a fruit of an illegal detention. Florida v. Royer, (1983) 460 U.S. 491 (1983).

Among the factors that tend to show a lack of voluntariness are: (1) whether the person was "in custody", U.S. v. Chan-Jimenez, 125 F.3d 1324, 1327 (9TH Cir. 1997); (2)

whether the officer failed to administer Miranda warnings, U.S. v. Childs, 944 F.2d 491, 496 (9th Cir. 1991)[Consent voluntary where defendant advised of his Miranda rights, was told of his right to refuse consent, and signed a written consent form]; (3) whether the officer informed the person of his right to refuse to consent, United States v. Watson, (1976) 423 U.S. 411 (1976); (4) the person was told that a search warrant could be obtained, U.S. v. Chan-Jimenez, 125 F.3d 1324, 1327 (9th Cir. 1997); (5) an officer's assertion of commands or directions, U.S. v. Chan-Jimenez, 125 F.3d 1324 (9th Cir. 1997).  Although the presence or absence of one of these factors is not dispositive of the voluntariness inquiry in any given case, consent is usually not found if several of these factors exist, U.S. v. Chan-Jimenez, (9th Cir 1997) 125 F.3d 1324, 1327, fn. 3 (9th. Cir. 1997).

    In the present case, defendant AVETYANTS was illegally detained; he was not advised of his right to refuse consent; he never signed a written consent form; he was not advised per Miranda.  If defendant AVETYANTS appeared to give consent, it was only in submission of Border Patrol Agent Stallings' expressed and implied exercise of authority.

    The Border Patrol Agent Stallings' actions in this case bear little resemblance to the appropriate Constitutional

standard and any "consent" which allegedly was obtained during this illegal detention is invalid.  These are exactly the types of fishing expeditions which the Fourth Amendment proscribes.

### V. CONCLUSION

Border Patrol Agents Zoetewey and Stallings violated defendant AVETYANTS' Fourth Amendment rights when the defendant was illegally detained, by the Agents' failure to act in a reasonable manner on the day in question.  Agent Stallings had no legitimate justification, nor did he have any reasonable suspicion or probable cause to believe that the defendant was in violation of any law and was involved in criminal activity.

The defendant's Fourth Amendment rights were infringed upon by the Border Patrol Agents. The evidence in this case flows from an illegal detention, an invalid consent, and an illegal search. It is tainted by illegality, and any and all evidence that is seized by the Agents must be suppressed as fruits of the poisonous tree.

Dated: August 4, 2008          Respectfully submitted,


                                   /s/ Garo Ghazarian
                                  GARO B. GHAZARIAN
                                  Attorney for Defendant
                                  ARA E. AVETYANTS